

March 14, 2025

**Via ECF**
Hon. Natasha C. Merle
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 2F North
Brooklyn, NY 11201

      **RE:**    *Jeremy Ginenthal v. TEC Building Systems LLC*
              **Case No. 1:24-cv-01256-NCM-MMH**

Dear Judge Merle:

The parties jointly write to respectfully request judicial approval of their wage-and-hour settlement agreement, attached hereto as **Exhibit 1** (the "Agreement"), pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). The Agreement resolves the claims of Plaintiff Jeremy Ginenthal ("Ginenthal") and Opt-in Plaintiff David Gore Jr. ("Gore Jr.") (collectively, "Plaintiffs"), brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

The Agreement between Plaintiffs and Defendant represents a fair resolution of this dispute. In reaching the agreement, the parties, who are both represented by experienced counsel, utilized the assistance of Giulio Zanolla, Esq. a highly qualified wage and hour mediator. Although the case did not settle during the mediation session, the parties and Mr. Zanolla continued their settlement discussions thereafter. The Agreement provides for payment of $10,000.00 to Plaintiff Ginenthal; $5,000.00 to Opt-In Plaintiff David Gore, Jr.; and $55,000.00 to Plaintiffs' counsel representing their separately negotiated fees and costs. As set forth below, this is a fair resolution of disputed wage and hour claims, which fairly compensates Plaintiff Ginenthal and Opt-In Plaintiff Gore for their alleged damages and Plaintiffs' counsel for a portion of their incurred attorneys' fees and costs.

**I.    RELEVANT BACKGROUND**

On February 19, 2024, Ginenthal commenced this putative FLSA collective and Rule 23 class action lawsuit (ECF Doc. No. 1), alleging that Defendant violated the FLSA and NYLL by failing to include premium payments under its On-Call Program in the calculation of employees' regular rates, resulting a shortfall in the amount of overtime that was due. Ginenthal also alleged that he was a "manual worker" within the meaning of the NYLL, and therefore should have been paid weekly, not bi-weekly. Lastly, Ginenthal alleged that Defendant failed to provide him with accurate wage statements pursuant to the NYLL. Plaintiff also filed an Amended Complaint on October 24, 2024 (ECF Doc. No. 21). Gore Jr. is a former employee of Defendant who joined this lawsuit on September 25, 2024 (ECF Doc. No. 20).

Plaintiff Ginenthal and Opt-In Plaintiff Gore's FLSA damages for the shortfall in calculating their overtime pay is estimated to be $500 and $500, respectively.

Hon. Natasha C. Merle
March 14, 2025
Page 2 of 6

## II. THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted). Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

The first *Wolinsky* factor weighs in favor of approval of the settlement. As stated above, Defendants agree to pay Plaintiff Ginenthal $10,000 and Opt-In Plaintiff Gore $5,000. Making all reasonable assumptions in Plaintiffs' favor, Plaintiffs calculated their total FLSA damages to be $1,000 in unpaid overtime wages and liquidated damages. Their settlement shares exceed their FLSA damages.

Defendant, however, maintains that Plaintiffs are not entitled to any damages. Among the legal defenses that Defendant would pursue if the case had to be litigated to trial would be that: (i) Ginenthal and Gore Jr. were never required to remain on call to work throughout each week; (ii) Ginenthal and Gore Jr. did not work overtime; and (iii) the overtime rate that Ginenthal and Gore Jr. claim they are entitled to is less than the rate they assert is applicable. As to the NYLL defenses, Defendant also maintained that field technicians like Ginenthal and Gore Jr. are highly trained and compensated worked who are not considered "manual workers"; Ginenthal and Gore Jr.'s NYLL claims are not actionable; and that the damages sought for these claims are unconstitutionally punitive. Defendant also argued that any NYLL damages would be limited to the interest accrued between the weeks where Ginenthal and Gore, Jr. were not paid and not the total wages earned in those weeks. Should Defendant prevail on any of these theories, and a judgment in Defendant's favor is certainly plausible, Plaintiffs could recover nothing. As such, the first *Wolinsky* factor favors approval of the settlement.

The parties respectfully maintain that the second and third *Wolinsky* factors also favor approval of the settlement. The Settlement enables Plaintiffs to receive a significant recovery while avoiding the need to confront the risks of trial, and substantial costs and delays. It is in Plaintiffs' best interest to receive an expedited settlement payment, rather than escalate the costs, burdens, and risks of further litigation and trial, and risk the ability to collect a judgment. This justification is furthered by the fact that Defendant has produced extensive records in mediation demonstrating its limited financial resources. Through these records and forthright discussions with the mediator

and counsel, Plaintiffs have been convinced that Defendant cannot afford a larger settlement or judgment than the Settlement provides. Because of this, Plaintiffs face the risk of being able to collect very minimal, or no monetary recovery, even if Plaintiffs should prevail at trial. *See, e.g., Asque v. S&W Supermarket, Inc.,* Case No. 19 Civ. 9426, 2020 U.S. Dist. LEXIS 103969 at *1-2 (S.D.N.Y. June 15, 2020) (noting that "in light of defendants' financial situation during the COVID-19 pandemic, Plaintiffs have expressed serious concerns about collectability…which militates in favor of finding a settlement reasonable"); *Villanueva v. 179 Third Avenue Rest. Inc.*, Case No. 16 Civ. 8782,, 2018 U.S. Dist. LEXIS 116379, at *5 (S.D.N.Y. July 12, 2018) ("Obstacles to collection may justify a reasonable settlement for an amount less than the maximum amount Plaintiffs might have recovered otherwise."); *see also Lliguichuzhca*, 948 F. Supp. 2d at 365 (collecting cases that "recognize[] that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").[1] In sum, the second and third *Wolinsky* factors favor approval of the settlement because it eliminates the risk of litigation and of Defendant's inability to withstand a larger judgment.

As to the fourth and fifth *Wolinsky* factors, the parties represent to the Court that this settlement is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive arm's length negotiations. As noted above, this settlement was achieved as a result of a mediation session and subsequent conversations with mediator Giulio Zanolla, Esq., who has a breadth of experience mediation wage-and-hour cases, including class and collective actions. The presence of a mediator "provides assurance that the settlement was not the product of collusion." *Bilbao v. LCS Enters. Inc.*, No. 17 Civ. 6744 (HBP), 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); *see also Luna v. J.S. Held LLC*, No. 21 Civ. 03072 (JMW), 2023 WL 2214012, at *7 (finding that the parties "properly engaged in bargaining at arms-length to reach the settlement agreement . . . [which was] shown by the parties attendance at court-appointed mediation, . . . and the negotiations that took place over the past year"); *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618-19 (S.D.N.Y. 2012) (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 159-60 (S.D.N.Y. 2011) (explaining parties are entitled to a presumption of fairness where mediator facilitated arm's-length settlement). Both parties' counsel also have significant experience handling wage-and-hour class and collective actions.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain any terms that would weigh against the Court approving it. *See Perez v. 66 Meat Corp.*, No. 22 Civ. 7003, 2024 WL 2716851, at *5 (E.D.N.Y. May 28, 2024) (Merle, J.) (finding that the settlement agreement did "not include the typical provisions that preclude approval, including (1) overbroad releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements . . . "). First, the release in the Agreement is limited to wage-and-hour claims. The release does not fall into the category of releases that are so

---

[1] While settlement of NYLL claims is not part of the *Cheeks* FLSA analysis, it is worth noting that the law as it relates to NYLL § 191 (manual worker pay claims) remains to be settled. There is still a question whether a private right of action exists for NYLL 191 claims, as there remains a split in New York State appellate courts due to *Vega v. CM & Assocs. Constr. Mgmt., LLC,* 107 N.Y.S.3d 286 (1st Dep't 2019) and *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (N.Y. App. Div. 2d Dep't 2024), *leave to appeal pending* (declining to follow *Vega* and instead holding that NYLL § 198 does not provide an express private right of action to recover damages where a manual worker was paid bi-weekly instead of weekly).

broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Pernal v. Proflame Inc.*, No. 21 Civ. 4526 (JMW), 2022 WL 16636689, at *4 (E.D.N.Y. Nov. 2, 2022) (approving the settlement agreement with a release that was limited to the plaintiffs' FLSA and NYLL claims); *Seecharan v. Heritage Place* LLC, No. 20 Civ. 3898 (WFK) (LB), 2021 WL 1299692, at *4 (E.D.N.Y. Mar. 15, 2021) ("[T]he release is limited to unpaid overtime wages and should be approved."); *Morales v. Fross, Zelnick, Lehrman & Zissu, P.C.*, No. 21 Civ. 04509 (PMH), 2021 U.S. Dist. LEXIS 233363, at *2 (S.D.N.Y. Dec. 6, 2021) (approving an agreement settling FLSA claims with a "release provision [that was] appropriately limited to wage-related claims . . . "). Here, the release in the Agreement is narrowly tailored to release only claims relevant to the instant action.

Second, the Agreement does not contain a confidentiality provision that may run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2750 (AT) (GWG), 2015 WL 4111668, at 1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-81 (S.D.N.Y. Mar. 30, 2015)); *Pernal*, 2022 WL 16636689 at *4 (approving the settlement agreement because, among other provisions, it did not contain a confidentiality provision that would have otherwise been a problematic provision flagged in *Cheeks*); *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA'").

Third, while the Agreement includes a mutual non-disparagement (or non-defamation) provision, this provision provides a carveout for Plaintiffs and Defendant to provide truthful statements about the claims and/or defenses in this action, and about the resolution of the action. *Seecharan*, 2021 WL 1299692 at *4 (approving the FLSA settlement as it did not contain a "[n]on-disparagement clause [that] bar[rred] plaintiffs from making public statements about their wage claims"); *Ramos Pelico v. PGNV, LLC*, No. 18 Civ. 09761 (PAC), 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements"); *Geskina v. Admore A.C. Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *7 (S.D.N.Y. May 3, 2017) ("Because [the mutual non-disparagement clause] includes a carve-out for truthful statements, it is permissible.").

Accordingly, the settlement achieved in this action clearly reflects an arm's-length negotiation, absent from fraud or collusion, and is a reasonable compromise over the contested *bona fide* issues in this lawsuit.

## III. ATTORNEYS' FEES AND COSTS

Through this settlement, Plaintiffs' counsel will receive a total of $55,000.00, which includes attorneys' fees and reimbursement of their costs totaling $5,170.00. Plaintiffs' counsel has collectively spent 131.6 hours handling this matter and $92,688.00 in total lodestar. Declaration of Michael Palitz, Esq. at ¶¶ 35-37 & Exhibit A (fee records); Declaration of Nicholas Migliaccio, Esq. at ¶¶ 26-28 & Exhibit B (fee records). Shavitz Law Group, P.A. paid costs totaling $2,690.00 for the complaint filing fees ($405.00), process server expenses ($75.00), and the mediator's fees

($2,210.00). Palitz Decl. ¶ 36. Migliaccio & Rathod's costs totaled $2,210.00 for the mediator's fees.

The FLSA and NYLL are fee-shifting statutes, which provide for attorneys' fees and costs to employees' counsel. 29 U.S.C. § 216(b); NYLL Art. 6 § 198 and Art. 19 § 663. When attorneys' fees are included as part of an FLSA settlement agreement, courts are required to "evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). "In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement." *Fisher*, 948 F.3d at 603-04 (citing and quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986)) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). "If plaintiffs' attorneys in these so-called 'run of the mill' FLSA actions are limited to a proportional fee of their client's recovery (here, a maximum of $11,170), no rational attorney would take on these cases unless she were doing so essentially pro bono." *Fisher*, 948 F.3d at 604. "Without fee-shifting provisions providing compensation for counsel, employees like [plaintiff] would be left with little legal recourse." *Id.* "[T]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Id*. at 604. Fee awards also include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998).

In assessing reasonableness of an attorneys' fee amount in an FLSA settlement, courts use the lodestar method. "[L]odestar is the 'presumptively reasonable fee'" in FLSA cases where that method is used. *Luo v. L&S Acupuncture, P.C.*, 649 Fed. Appx. 1 (2d Cir. May 16, 2016) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)).

In this case, Plaintiffs' counsel's lodestar total is $92,688.00. This amount is based off of 131.6 hours worked and using reasonable rates which have been approved by other courts. Palitz Decl. at ¶¶ 34-39 & Exhibit A (fee records); Migliaccio Decl. at ¶¶ 26-32 & Exhibit B (fee records). Plaintiffs' counsel also advanced costs in this case totaling $5,170. Palitz Decl. at ¶ 38. A settlement of Plaintiffs' counsel's attorneys' fees and costs totaling $55,000.00, which includes $49,830 in attorneys' fees and $5,170.00 in costs, is reasonable.

*        *        *

For the foregoing reasons, the parties respectfully request that the Court approve the attached settlement agreement as fair and reasonable, and retain jurisdiction to enforce the terms of the parties' Agreement. We thank the Court for its time and consideration.

Respectfully submitted,

| | |
|---|---|
| s/Michael J. Palitz | */s/ Eli Z. Freedberg* |
| Michael J. Palitz, Esq. | Eli Z. Freedberg, Esq. |
| Shavitz Law Group, P.A. | Jennifer S. Kim, Esq. |
| 477 Madison Avenue | Littler Mendelson, P.C. |
| 6th Floor | 900 Third Avenue, 8th Floor |
| New York, NY 10022 | New York, NY 10022 |

5

Hon. Natasha C. Merle
March 14, 2025
Page 6 of 6

mpalitz@shavitzlaw.com					efreedberg@littler.com
							jeskim@littler.com

cc:	All Counsel of Record (via ECF)